RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0015p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

    *v.*

                No. 07-3758

TYREE SKIPPER,

                *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 05-00479—Lesley Brooks Wells, District Judge.

Argued: October 29, 2008

Decided and Filed: January 13, 2009

Before: NORRIS, ROGERS, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jeffry F. Kelleher, JEFFRY F. KELLEHER & ASSOCIATES, Cleveland, Ohio, for Appellant. Vasile C. Katsaros, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jeffry F. Kelleher, JEFFRY F. KELLEHER & ASSOCIATES, Cleveland, Ohio, for Appellant. Vasile C. Katsaros, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

KETHLEDGE, J., delivered the opinion of the court, in which NORRIS, J., joined. ROGERS, J. (pp. 7-8), delivered a separate dissenting opinion.

_____

## OPINION

_____

KETHLEDGE, Circuit Judge. Defendant Tyree Skipper pled guilty to a controlled-substance offense and was sentenced to 151 months' imprisonment. He now appeals his sentence, arguing that he was improperly designated a career offender under the Sentencing Guidelines and that his sentence was otherwise unreasonable. We affirm.

1

I.

On June 1, 2006, Skipper pled guilty to possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Skipper's Presentence Investigation Report recommended that he be designated a career offender under § 4B1.1 of the Sentencing Guidelines. Skipper objected to the designation, arguing that his 2005 guilty plea to fourth-degree burglary in Portage County, Ohio—for which he had not yet been sentenced—should not count as a predicate offense for purposes of the designation. To buttress that argument, Skipper filed a motion before Judge Laurie J. Pittman of the Portage County Court of Common Pleas, to vacate the plea. He also obtained three court orders—two by Judge Pittman and one by United States District Judge Lesley Wells—requiring that Skipper be produced in the Portage County court for a hearing on his motion. For reasons not made clear by the record, however, Skipper was never brought to the hearing. In any event, on October 16, 2006—the third date set for the hearing—Judge Pittman denied Skipper's motion to vacate. Skipper's counsel was at the hearing, but Skipper himself was not.

The federal district court thereafter proceeded with Skipper's sentencing. Skipper argued that—notwithstanding his failure to have the Portage County plea vacated—the plea should be disregarded for purposes of the career-offender determination because, he said, it was not a conviction for a crime of violence as defined by U.S.S.G. § 4B1.2. The district court disagreed, and designated him a career offender. But the court granted Skipper's request—which the government supported—for a downward departure of one level in his criminal history category. The resulting total offense level of 30 and criminal history category of V produced a Guidelines range of 151-188 months. The district court imposed a sentence of 151 months. Absent the career-offender designation, Skipper's range would have been 63-78 months.

This appeal followed.

II.

We review *de novo* a district court's conclusion that a crime qualifies as a predicate offense for the career-offender designation. *United States v. Montanez*, 442 F.3d 485, 488 (6th Cir. 2006). To be designated a career offender under the Guidelines, a defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Skipper concedes he has at least one such prior conviction, but presents two arguments as to why his Portage County plea cannot count as the second.

First, Skipper argues that his Portage County guilty plea was not a "conviction" under § 4B1.1(a) because, at the time of his sentencing, it was not yet a conviction as defined by Ohio state law. What counts as a conviction for purposes of the Guidelines, however, is governed by federal law. Section 4B1.2 itself provides that "[t]he date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by *guilty plea*, trial, or plea of *nolo contendere*." *Id*. § 4B1.2(c) (emphasis added). For purposes of § 4B1.1, then, a guilty plea counts as a conviction as soon as it is entered. Skipper's first argument therefore is meritless.

Skipper next argues that the offense to which he pled guilty in Portage County—fourth-degree burglary as defined by Ohio Rev. Code § 2911.12(A)(4)—is not a crime of violence for purposes of § 4B1.1. Skipper did not present this argument to the district court, so our review is limited to determining whether the district court committed plain error. *See United States v. Oliver*, 397 F.3d 369, 375 (6th Cir. 2005).

The Guidelines define a crime of violence as follows:

[A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —

(1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

U.S.S.G. § 4B1.2(a) (emphasis added). The italicized language is known as the "otherwise" clause. *See*, *e.g.*, *United States v. Bartee*, 529 F.3d 357, 360 (6th Cir. 2008).

Ohio law defines fourth-degree burglary as follows: "No person, by force, stealth, or deception, shall . . . [t]respass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." Ohio Rev. Code § 2911.12(A)(4) (effective July 1, 1996). This offense is not encompassed by § 4B1.2(a)(1) because it lacks as an element "the use, attempted use, or threatened use of physical force against the person of another[.]" The offense likewise does not qualify as a "burglary of a dwelling" within the meaning of § 4B1.2(a)(2)—also known as "generic burglary"—because it lacks the element of intent to commit a crime within the habitation. *See Taylor v. United States*, 495 U.S. 575, 599 (1990). The question, then, is whether this offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).

We employ a "categorical approach" in answering this question. *Bartee*, 529 F.3d at 360. Under this approach, "we consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of th[e] particular offender." *United States v. James*, 550 U.S. 192, ___, 127 S. Ct. 1586, 1594 (2007) (emphasis in original). In a case where the defendant has pled guilty, we may also consider the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). Finally, because the term "potential risk" is "inherently probabilistic[,]" *James*, 127 S. Ct. at 1597, the offense need not be dangerous in every conceivable case in which its elements are met. "Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the *ordinary* case, presents a serious potential risk of injury to another." *Id.* (emphasis added).

This test is met here. *James* concerned whether attempted burglary, as defined by Florida law, presented a serious potential risk of injury to another. The Supreme Court held it did, because "[t]he main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face

confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." *Id.* at 1594.

The same risk is present with respect to fourth-degree burglary as defined by Ohio law. The offense requires that the defendant trespass in the "habitation" of another person; that the trespass be effected by "force, stealth, or deception"; and that these things occur when an innocent person is "present or likely to be present." Ohio Rev. Code § 2911.12(A)(4). The Ohio statute thus sets forth a recipe for precisely the kind of surprise confrontation whose risk of physical injury underlay the Supreme Court's holding in *James*. Indeed, the Ohio statute arguably describes an even more dangerous scenario, since the Florida statute did not require that an innocent person be present or likely to be present during the offense. The Florida offense thus categorically presents a lesser risk of confrontation than does the Ohio one.

Skipper argues, however, that the *type* of confrontation encompassed by the Ohio statute is categorically less dangerous than the type at issue in *James*. The reason, Skipper says, is that the Florida statute required that the burglar enter the structure "with the intent to commit an offense therein," *James*, 127 S. Ct. at 1591, whereas the Ohio statute does not. But the mere fact that the Ohio statute does not *require* such intent does not mean that, in the ordinary case, the intruder will not have it. A risk need not itself be an element of an offense in order to be considered as part of the hypothetical "ordinary case" by which the offense's dangerousness is measured. *James* itself makes that clear, since the risk of confrontation on which the Court based its holding was not an element of the Florida offense. It is instead enough that the risk is reasonably likely to arise in the ordinary case where the elements themselves are present—again, like the risk of confrontation in *James*. And here we think it reasonably likely that, in the ordinary case, an intruder who enters a habitation "by force, stealth, or deception," Ohio Rev. Code § 2911.12(A)(4), will plan to do something unlawful there. We therefore reject the premise of Skipper's argument.

The argument also takes a pretty unrealistic view of confrontations during burglaries. Their danger lies not only in the intruder's intent, but in their volatility. *See generally James*, 127 S. Ct. at 1594-95. People do unpredictable things when they unexpectedly encounter burglars in their homes. The burglars often reciprocate. The result is

confrontations that present a serious risk of physical injury regardless of the burglar's initial intent. *Cf. United States v. Venegas-Ornelas*, 348 F.3d 1273, 1278 (10th Cir. 2003) (an intruder "will often encounter resistance either from occupants or structural barriers in 'entering or remaining' in someone's dwelling unlawfully, regardless of the [intruder's] intent in being there").

Finally, Skipper argues that *United States v. Calloway*, 189 F. App'x 486 (6th Cir. 2006), demands a different result in this case. There, we held—without any further analysis of the point—that "it is unclear" whether fourth-degree burglary under Ohio law "involve[s] conduct that present[s] a serious risk of physical injury." *Id.* at 490. For the reasons discussed above, however, the Supreme Court's intervening decision in *James* has now made that clear.

We are bound to follow *James*. Consequently, we hold that the district court did not err in counting Skipper's guilty plea to fourth-degree burglary as a predicate offense for his career-offender designation.

Finally, Skipper argues that his sentence was unreasonably long, notwithstanding that the district court granted him a downward departure. We review sentences for reasonableness under an abuse of discretion standard. *United States v. Phinazee*, 515 F.3d 511, 514 (6th Cir. 2008). The *reason* that Skipper thinks his sentence is too long is that he should not have been sentenced as a career offender. This argument is thus derivative of his other ones, and we reject it for the same reasons.

III.

For these reasons, we affirm.

_____

**DISSENT**

_____

ROGERS, Circuit Judge, dissenting.  Because fourth degree burglary in Ohio—a trespass crime that is not "burglary" under the relevant U.S. Sentencing Guideline—is not categorically a "crime of violence" for career offender purposes, I would reverse.  The terms of the Ohio statute would apply to a situation where the trespasser enters the home of an acquaintance, waits for the acquaintance to return, and for a period refuses to leave when asked to leave.  Such a crime does not entail the type of danger involved in potential confrontations with intruders who intend theft or assault.

The statute does not include an element that the defendant intend to commit a crime other than the trespass itself, and the statute is therefore different from generic burglary and different from the attempted burglary at issue in *James v. United States*, 550 U.S. 192 (2007).  Neither the requirement that the defendant have entered by "force, stealth, or deception," nor the requirement that an innocent person be present, raises the type of danger of violence that entering with intent to commit an offense raises.

We cannot assume that entering by "force, stealth, or deception" is the equivalent of entering to commit a crime.  Indeed, the Ohio statute distinguishes *among* entries by "force, stealth, or deception" on precisely the basis of whether there is purpose to commit a criminal offense.  The requirement of "force, stealth, or deception," apart from the intent to commit a crime, is not difficult to meet.  "Stealth," for instance, "means any secret, sly or clandestine act to avoid discovery and *to gain entrance into* or to remain within *a residence of another without permission.*"  *State v. Lane*, 361 N.E.2d 535, 540 (Ohio Ct. App. 1976) (emphasis added), *quoted with approval in State v. Dowell*, 853 N.E.2d 354, 356-57 (Ohio Ct. App. 2006), *and State v. Ward*, 620 N.E.2d 168, 170 (Ohio Ct. App. 1993).  "Force," moreover, may include using the strength of a defendant to turn the doorknob and push open an unlocked door.  *Lane*, 361 N.E.2d at 539 (interpreting identical language in aggravated burglary statute); *State v. Austin*, No. 20445, 2005 Ohio App. LEXIS 1043, at **5-**7 (Ct. App. Mar. 11, 2005) (same), *rev'd in part on other grounds*, 847 N.E.2d 1174 (Ohio 2006).

Moreover, the actual or likely presence of an innocent person, in the absence of an intruder's intent to commit an offense, is not sufficient for us to infer the risk of confrontation relied upon in *James*. Indeed the intent of a burglar to commit a crime is largely what makes a confrontation between burglar and bystander so potentially dangerous. The Supreme Court explained as follows why Congress singled out burglary as a crime with the inherent potential for harm to persons:

> The fact that an offender enters a building *to commit a crime* often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate. And the offender's *own awareness of this possibility* may mean that he is prepared to use violence if necessary to carry out his plans or to escape.

*Taylor v. United States*, 495 U.S. 575, 588 (1990) (emphasis added). The Supreme Court noted in *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004), that burglary, "by its nature, involves a substantial risk that the burglar will use force against a victim *in completing the crime*." (Emphasis added.)

While our inquiry at this stage is properly categorical, meaning that we look at the terms of the Ohio crime of which Skipper was convicted, the facts according to Skipper nonetheless provide an example of the type of nonviolent activity covered by Ohio fourth degree burglary. Skipper contends that he entered into the dwelling of his girlfriend when she wasn't home to speak with her. He waited for her to come home, at which time they became involved in a verbal domestic dispute. He did not leave, and the girlfriend called the police, who arrested Skipper. The return of the girlfriend is what triggered the applicability of fourth degree burglary in this scenario, *see State v. Davis*, No. 83033, 2004 Ohio App. LEXIS 1658, at **12 (Ct. App. April 15, 2004), but the presence of the girlfriend simply does not raise the type of confrontation risk relied upon in *James* and referred to in *Taylor* and *Leocal*.