*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0233p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee,*

  *v.*

KEAHMBI COLEMAN,

  *Defendant-Appellant.*

No. 10-3205

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 09-00175-001—Kathleen McDonald O'Malley, District Judge.

Argued: July 21, 2011

Decided and Filed: August 24, 2011

Before: COLE and ROGERS, Circuit Judges; SARGUS, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Jeffrey B. Lazarus, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Daniel R. Ranke, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Amy B. Cleary, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Daniel R. Ranke, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

ROGERS, Circuit Judge. Keahmbi Coleman challenges his sentence enhancement under the Armed Career Criminal Act (ACCA) on the ground that a violation or attempted violation of Ohio's third-degree burglary statute, O.R.C.

_____

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

§ 2911.12(A)(3), is not categorically a "violent felony." *See* 18 U.S.C. § 924(e)(2)(B). Because the burglary or attempted burglary of an "occupied structure" creates a risk of physical injury that is similar to the risk posed by generic burglary, the offense is categorically violent under the residual "otherwise" clause of § 924(e)(2)(B)(ii). The district court therefore properly imposed the enhancement.

Cleveland police arrested Coleman after a domestic dispute. In his back pocket they found an unloaded, dilapidated firearm frame that had no trigger assembly and could not be made readily operable. There is no dispute that a firearm frame counts as a "firearm" for purposes of § 922(g)(1). *See* 18 U.S.C. § 921(a)(3)(B). Coleman claims that he discovered the frame in his backyard and put the gun in his pocket so that his children and other children in the neighborhood would not find it.

A federal grand jury indicted Coleman for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Coleman pled guilty and the district court imposed an ACCA-enhanced sentence based on his three prior Ohio convictions for burglary in 2002 and 2005 and attempted burglary in 2002. *See* O.R.C. § 2911.12(A)(3). The district court reasoned that although O.R.C. § 2911.12(A)(3) proscribes "non-generic" burglaries, *see Taylor v. United States*, 495 U.S. 575, 598 (1990), Coleman's prior convictions nevertheless qualify as violent felonies under the ACCA's residual provision for crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The court then sentenced Coleman to the mandatory minimum fifteen-year prison term. *See id.* § 924(e)(1).

This sentence, though harsh on the facts of this case, was properly imposed because of Coleman's record of three prior convictions that are "violent felonies" under the residual clause of § 924(e)(2)(B)(ii). Coleman's only challenge is to the applicability of the ACCA, and that challenge fails. The ACCA requires a minimum fifteen-year sentence for any person who violates § 922(g)(1) and has three previous convictions for a "violent felony" or a "serious drug offense." *Id.* § 924(e)(1). A "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year" that:

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 924(e)(2)(B).

Coleman pled guilty to violating Ohio's third-degree burglary statute in 2002 and 2005, and to an attempted burglary violation in 2002. *See* O.R.C. § 2911.12(A)(3). The statute in question meets the "otherwise involves" prong of the ACCA's definition of a violent felony. Indeed, the Tenth Circuit has precisely so held in a 2009 case involving the same Ohio statute. *United States v. Scoville*, 561 F.3d 1174, 1180-81 (10th Cir. 2009). The statute provides that no person "by force, stealth, or deception" shall:

Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense.

O.R.C. § 2911.12(A)(3). An "occupied structure" is defined in turn as:

[A]ny house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:

(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.

(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.

(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.

(4) At the time, any person is present or likely to be present in it.

O.R.C. § 2909.01(C). Coleman argues that a trespass or attempted trespass in an "occupied structure" is not categorically "violent" for purposes of 18 U.S.C. § 924(e)(2)(B)(ii). Under the "categorical approach" to determining whether an offense counts as a violent felony, we "consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into

the specific conduct of th[e] particular offender." *James v. United States*, 550 U.S. 192, 202 (2007) (emphasis in original).

Although burglary is an enumerated example of a "violent felony," *see* 18 U.S.C. § 924(e)(2)(B)(ii), Ohio's third-degree burglary statute proscribes conduct broader than the Supreme Court's definition of "generic burglary," which—for § 924(e) purposes—means "any crime . . . having the basic elements of unlawful or unprivileged entry into, or remaining in, *a building or structure*, with intent to commit a crime." *Taylor*, 495 U.S. at 599 (emphasis added). Under Ohio law, an "occupied structure" includes any "house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter." O.R.C. § 2909.01(C). Thus, Ohio's third-degree burglary statute sweeps more broadly than generic burglary because it "includ[es] places, such as automobiles and vending machines, other than buildings." *United States v. Holycross*, 333 F. App'x 81, 85 (6th Cir. 2009) (quoting *Taylor*, 495 U.S. at 598); *see United States v. Lane*, 909 F.2d 895, 902 (6th Cir. 1990).[1]

Nevertheless, a violation or attempted violation of O.R.C. § 2911.12(A)(3) is a violent felony under the residual clause of § 924(e)(2)(B)(ii) because it "otherwise" creates a risk of physical injury that is similar to the risk posed by generic burglary. It is well established that burglary and attempted burglary in Ohio "involve[] conduct that presents a serious potential risk of physical injury to another." *Lane*, 909 F.2d at 903 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)); *see also United States v. Skipper*, 552 F.3d 489, 493 (6th Cir. 2009). The risk inheres in the "possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." *James*, 550 U.S. at 203. As we explained in *Lane*, "[a]n 'occupied structure' is defined broadly to include places in which a person

---

[1] It does not matter that the "occupied structures" in this case happen to be buildings, PSR at ¶¶ 34, 36, since that detail is not apparent from the limited sources a court may consider in adhering to the "categorical approach." *See Shepard v. United States*, 544 U.S. 13, 16 (2005). As the district court correctly held, an examination of the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented," *id.*, does not permit a conclusion that all of the elements of generic burglary were satisfied for each of Coleman's prior convictions. These documents "merely track the language of Ohio's burglary statute and do not specifically identify the type of 'occupied structure(s)' at issue." R. 22 at 11.

is actually or likely to be present." 909 F.2d at 903 (citing O.R.C. § 2909.01). Thus, the burglary of such a structure categorically presents a serious risk of injury. *Id.*

That does not end the inquiry, however, because the risk of injury—in addition to being serious—must also be "roughly similar, in kind as well as in degree," to the risk posed by one of the enumerated examples in § 924(e)(2)(B)(ii). *Begay v. United States*, 553 U.S. 137, 143 (2008). This requirement is met as well. Ohio's third-degree burglary statute, though broader than generic burglary, is clearly "similar in kind" to generic burglary. Indeed, the only difference between third-degree burglary in Ohio and generic burglary is the substitution of "occupied structure" in place of "building." It is therefore difficult to imagine what could be more "similar in kind" to an enumerated offense than Ohio's third-degree burglary statute. *See Scoville*, 561 F.3d at 1180.

The risk posed by the burglary of an "occupied structure" is also similar "in degree" to the risk posed by a generic burglary. This is because the risk in both situations—the potential for a violent confrontation—arises from the same possibility: that "an innocent person might appear while the crime is in progress." *James*, 550 U.S. at 204. The Ohio statute describes four different ways in which a structure can be "occupied," ranging from a structure that is "maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied," O.R.C. § 2909.01(C)(1), to one in which, "[a]t the time, any person is present or likely to be present," *id.* § 2909.01(C)(4). In each case, the risk created by a trespass with purpose to commit a criminal offense is that an innocent person—whether already inside the structure, nearby, or arriving on the scene—will notice the intruder, leading to a "face-to-face confrontation" that results in a physical injury. *See James*, 550 U.S. at 203; *Scoville*, 561 F.3d at 1180-81. Accordingly, because the burglary of an "occupied structure" creates a risk of injury that is similar to the risk posed by generic burglary, all three of Coleman's prior convictions are violent felonies under the residual clause of § 924(e)(2)(B)(ii).

The fact that one of Coleman's convictions was for an attempted violation of O.R.C. § 2911.12(A)(3) does not change matters. Indeed, "the risk posed by an attempted burglary . . . may be even greater than that posed by a typical completed

burglary." *James*, 550 U.S. at 204. As the Supreme Court explained, many attempted burglaries remain just that—attempts—precisely because the burglar is "thwarted by some outside intervenor." *Id.* (citing our decision in *Lane*, 909 F.2d at 903). For this reason, we have consistently held that attempted burglaries are no less "violent" than completed burglaries for purposes of the residual clause. *See Lane*, 909 F.2d at 903 (Ohio attempted burglary); *United States v. Bureau*, 52 F.3d 584, 593 (6th Cir. 1995) (Tennessee attempted burglary); *United States v. Fish*, 928 F.2d 185, 188 (6th Cir. 1991) (Michigan attempted burglary).

Nor does it matter that the "presence or likely presence" of another person is not a separate requirement of Ohio's third-degree burglary statute, but is instead merely one way in which a structure is considered "occupied." *See* O.R.C. § 2909.01(C). Relying on *United States v. Lewis*, 330 F. App'x 353, 364 (3d Cir. 2009), Coleman argues that unlike Ohio's second-degree burglary statute, O.R.C. § 2911.12(A)(2), the "actual or likely presence" of another person is not an element of Ohio's third-degree burglary statute, O.R.C. § 2911.12(A)(3), and therefore the offense does not pose a serious risk of physical injury to another.

But this confuses the absence of a statutory element *requiring* the presence or likely presence of another with "the *possibility* of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander—who comes to investigate." *James*, 550 U.S. at 203 (emphasis added). As we explained in holding that Ohio's fourth-degree burglary statute—which omits the element "with purpose to commit . . . any criminal offense"—was nevertheless a "crime of violence" under the career-offender guideline, "[a] risk need not itself be an element of an offense in order to be considered part of the hypothetical 'ordinary case' by which the offense's dangerousness is measured." *Skipper*, 552 F.3d at 493. Indeed, the presence or likely presence of another person is not even a requirement of generic burglary—the enumerated example against which the riskiness of Ohio's third-degree burglary offense must be judged. *See Taylor*, 495 U.S. at 599.

Instead, it is the "occupation" itself—whether the structure is currently occupied or merely maintained as a dwelling—that increases the odds that a trespass in that structure will be interrupted by "an occupant, caretaker, or some other person who comes to investigate." *Lane*, 909 F.2d at 903 (quoting *Taylor*, 495 U.S. at 588). And this is true regardless of the type of structure at issue. Whether the occupant makes his home in a summer cabin or a tent, it is the maintenance of that structure as a dwelling that generates the possibility that an innocent person will come along just as the burglar is inside or attempting to break in.

Finally, it makes no difference that Coleman can imagine a non-risky way to burglarize such a structure. While there may be situations in which the break-in of an "occupied structure" would not pose a serious risk of injury, the same is true of generic burglary. *See James*, 550 U.S. at 208. Under the categorical approach, it suffices that "in the ordinary case," a trespass (or attempted trespass) in an occupied structure creates the potential for a violent confrontation that is similar to the risk posed by generic burglary. *See id.*; *Begay*, 553 U.S. at 143.

Coleman protests that Ohio's third-degree burglary statute does not proscribe the type of "purposeful, violent, and aggressive conduct" that is characteristic of the enumerated examples preceding the residual clause. *See Begay*, 553 U.S. at 145. But the Supreme Court has recently made clear that the absence of a statutory element requiring proof of such conduct is not by itself a ground for concluding that an offense is not categorically violent. *See Sykes v. United States*, — U.S. —, 131 S. Ct. 2267, 2275-76 (2011).

Coleman also asks this court to vacate his sentence for the entirely different reason that his 2005 burglary conviction is invalid under state law. By statute, Ohio courts must notify defendants that they will be subject to post-release control when imposing sentences for certain felonies. O.R.C. § 2929.19(B)(3)(c)-(e). Several Ohio cases suggest that sentences for offenders who do not receive the required notice are "void," *see State v. Singleton*, 920 N.E.2d 958, 961-63 (Ohio 2009), and Coleman argues that his 2005 burglary conviction cannot serve as an ACCA predicate because he was

not properly notified of post-release control at sentencing.  But the Ohio Supreme Court recently clarified that a failure to provide the required notice results only in invalidation of the improperly imposed term of post-release control, not the entire sentence (much less the underlying conviction).  *State v. Fisher*, 942 N.E.2d 332 (Ohio 2010).  And even if the Ohio Supreme Court had not eliminated the basis for Coleman's claim, he would not be permitted to attack his state conviction collaterally in a federal sentencing proceeding.  *See United States v. Aguilar-Diaz*, 626 F.3d 265, 269-71 (6th Cir. 2010) (applying *Custis v. United States*, 511 U.S. 485, 496 (1994)).

The judgment of the district court is affirmed.