ALICE M. BATCHELDER, Circuit Judge,
dissenting.
I respectfully dissent for two reasons. First, Prater has not preserved the objection that he now raises on appeal to his designation as an Armed Career Criminal. Although Prater did make several particular objections to the district court, none of them questioned whether his prior New York felony convictions qualified as “violent felonies” for purposes of an ACCA enhancement. And because I agree with the majority opinion that the “confusion and disagreement,” Maj. Op. at 518, that mars analysis under the ACCA residual clause precludes a finding that the district court plainly erred, I would affirm Prater’s sentence.
Second, I would affirm Prater’s sentence even had he preserved the specific objection he now raises. Under the “modified categorical approach,” the risk of violent confrontation inherent in one set of alternative elements in a divisible statute need only be “reasonably likely ... in the ordinary case” to approach the level of risk inherent in generic burglary. Because each set of alternative elements of New York’s third-degree burglary statute encompasses risks similar to those of generic burglary, I would affirm Prater’s sentence.
I.
Prater’s objection to his Presentence Investigation Report (“PSR”) states:
Defendant Paul Douglas Prater gives notice of his objections to the Presen-tence Investigation Report (the “PSR”) issued in this case. Mr. Prater objects *520 to his designation as an Armed Career Criminal under 18 U.S.C. § 924(e) and USSG § 4B1.4. The PSR states that Mr. Prater qualifies as an Armed Career Criminal as a result of the following convictions: (1) February 19, 1980 — Attempted Burglary 3rd Degree on January 7, 1980 (PSR at ¶ 26); (2) February 24, 1988 — Robbery 3rd Degree on March 17, 1985 (PSR at ¶ 30); (3) February 24, 1988 — Burglary 3rd Degree on October 28, 1987 (PSR at ¶ 31); and (4) March 30, 2000 — Attempted Burglary 3rd Degree on November 7, 1999 (PSR at ¶ 32).
Mr. Prater relies on the arguments previously raised on this issue. Some of the pleading dealing with this issue are documents 51 and 65 in the record. In summary, the prior pleadings dealt with Prater’s arguments relating to: 1) the contention that his rights under New York law had been merely suspended, not revoked, or had otherwise been restored and Prater’s rights under the Second Amendment to the United States Constitution; 2) the contention that the charging statute allowed conviction under a strict liability standard without a required knowledge or intent and was vague and overly broad; and (3) the Armed Career Criminal punishment was excessive and a violation of his Eighth Amendment rights under the specific and particular facts of this ease.
The majority opinion reasons that “[a]l-though the second paragraph of Prater’s objection statement discusses additional issues, the first paragraph, albeit barely, properly preserves Prater’s violent-felony claim.” Maj. Op. at 506.
As the majority acknowledges, however, objecting to a court’s action is not itself sufficient to preserve a claim. Looking solely at the first paragraph, Prater objected to his designation in general terms, but he provided no basis for his objection. Prater must do more than object; he also must provide “the grounds for that objection.” Fed.R.Crim.P. 51(b). The first paragraph — on its own — does not “constitute a sufficiently articulated objection,” nor does it provide “the true basis for his objection.” United States v. Bostic, 371 F.3d 865, 871 (6th Cir.2004) (internal quotation marks omitted).
When Prater stated that he “objects to his designation as an Armed Career Criminal,” under the majority’s reading, “[t]his can only mean that Prater objected to the presentence report because he did not believe that he ... ‘violate[d] section 922(g) of [Title 18 of the United States Code] and has three previous convictions by any court ... for a violent felony....’” Maj. Op. at 506. But Prater could argue — and actually has argued in the second paragraph — that he has not violated § 922(g) because § 922(g) is unconstitutional. Prater could challenge his designation for any number of reasons unconnected to whether his three previous convictions are violent felonies. Thus, an objection to his “designation” should not be construed automatically as an objection to his state-law convictions as violent felonies. Prater “objected],” but in the first paragraph he provided no reason for his objection. Because we are left to guess the reasons for Prater’s objection, the objection was not “clearly made” and the first paragraph of Prater’s objection to the PSR is insufficient to preserve his claim. We should not vacate Prater’s sentence for a reason Prater himself never raised in the district court.
Interpreting the first paragraph of Prater’s objection statement in light of the second paragraph further undermines the majority’s conclusion. The “arguments previously raised” on which Prater relies appear in his first and second motions to *521 dismiss.[1] He argued that the strict liability nature of the ACCA enhancement “is a violation of due process,” that the ACCA enhancement violates “the Fifth and Sixth Amendments^] [ ] protection against vagueness,” that the ACCA enhancement violates the Eighth Amendment, and that his New York convictions’ violate the Second Amendment. These are the same grounds specifically enumerated in the second paragraph of his objection statement. Nowhere did Prater allege that his prior New York felony convictions were not violent felonies. Thus, regardless whether we read the first and second paragraph of Prater’s objection statement together or separately, Prater has not preserved this claim.
The majority also finds it important to note that both the probation officer and the district court judge addressed whether Prater’s convictions were violent felonies. The majority admits elsewhere, however, that “[i]t is the ‘government [that] bears the burden of proof with regard to the various penalties it seeks to have imposed under the sentencing guidelines.’ ” Maj. Op. at 512 (quoting United States v. Cowart, 90 F.3d 154, 159 (6th Cir.1996)). Even absent an objection, it was incumbent upon the government and the district court judge to ensure that Prater’s prior convictions were qualifying predicate offenses. The fact that the district court concluded that Prater’s convictions were violent felonies does not mean that Prater can now question whether they qualify as violent felonies for the first time on appeal.[2]
Accordingly, I would review only for plain error the district court’s conclusion that Prater’s convictions are “violent felonies” within the meaning of the ACCA. The reasons provided by the majority opinion for holding that the district court did not plainly err by concluding that Prater’s prior convictions are “crimes of violence” apply equally here. As the opinions in this case illustrate, whether a conviction for a state law offense is a “violent felon[y]” is “subject to reasonable dispute,” Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009), meaning the error — if any — is not “plain.” The fact that the Second Circuit has held that New York’s third-degree burglary statute categorically qualifies as a violent felony further precludes a finding of plain error. See United States v. Williams, 53 F.3d 769, 772 (6th Cir.1995).
II.
Not only did the district court not plainly err, however, it did not err at all. My disagreement with the majority opinion arises from its characterization of the scope of risk inherent in the two non-generic forms of New York’s third-degree burglary statute. Our cases demand a more permissive approach when comparing alternative elements to their generic form. We are required to assess the risk inherent “in the ordinary ease” where the elements are present. United States v. *522 Skipper, 552 F.3d 489, 493 (6th Cir.2009). “A risk need not itself be an element of an offense in order to be considered as part of the hypothetical ‘ordinary case’ by which the offense’s dangerousness is measured .... It is instead enough that the risk is reasonably likely to arise in the ordinary case where the elements themselves are present....” Id. The risk involved in the commission of New York third-degree burglary need not be “exactly the same kind of risk” as involved in generic burglary. And the risk relevant to this analysis is not merely the possibility of a violent confrontation with someone in or around the building. Taylor v. United States, 495 U.S. 575, 588, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), also emphasizes the risk of violent confrontation with “some other person who comes to investigate.”
The first alternative form of third-degree burglary is knowingly entering or remaining unlawfully in a vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein, or used as an elementary or secondary school. See N.Y. Penal Law §§ 140.20, 140.00(2). The majority believes that
the offense encompasses unlawful entry of a houseboat but not a recreational canoe, of a food truck but not a recreational seaplane, of a mobile home used as a classroom but not a school bus. By restricting its application to places where people are likely to be found, New York’s burglary statute, as applied to vehicles and watercraft, is sufficiently similar to generic burglary.
Maj. Op. at 514-15. Although the majority reaches the correct conclusion, it unnecessarily restricts the scope of the conduct contemplated by this alternative. The modified categorical approach directs us to analyze the “elements of the offense,” not how relevant courts have construed the elements of the underlying state offense. Relevant courts can, nonetheless, assist in describing conduct covered by the plain terms of the statute. The first alternative covers a wide array of places. For instance, a “building” includes a department store’s “storage trailer” from which customers could pick up large items, see People v. Wandell, 285 A.D.2d 736, 728 N.Y.S.2d 578, 579 (2001); a passenger train car, see People v. Marino, 208 A.D.2d 564, 617 N.Y.S.2d 26, 26 (1994); or a van used by a “construction company primarily to transport workers, materials and tools,” see People v. Mincione, 66 N.Y.2d 995, 499 N.Y.S.2d 383, 489 N.E.2d 1285, 1285 (1985). This alternative is not restricted to places “where people are likely to be found.” Maj. Op. at 515. Even a food truck or mobile home used as a classroom likely is occupied only a few hours each day. Yet this is sufficient for the majority to conclude that the risk of violent confrontation is sufficiently similar to the risk inherent in generic burglary.
But the majority then concludes that because the second alternative form of burglary — knowingly entering or remaining unlawfully in an enclosed motor truck or motor-truck trailer, see §§ 140.20, 140.00(2) — contains no requirement that it be used for “lodging, business, or schooling,” the risk of a violent confrontation “is significantly less,” and thus Prater’s conviction must be vacated. Maj. Op. at 518. The absence of this specific requirement is irrelevant, however, if in the ordinary case a similar risk is likely to arise during the burglary of an enclosed motor truck or motor-truck trailer. See Skipper, 552 F.3d at 493. Although undefined in § 140.00(2), a motor truck is generally a commercial vehicle used to transport cargo. See, e.g., N.Y. Transp. Law § 210 (“The term ‘motor truck’ as used in this article shall be deemed to mean and include any commercial motor vehicle held and used for the transportation of goods, wares and mer *523 chandise for hire or for a business purpose, pursuant to the rules and regulations of the commissioner.”)- Motor trucks often are attached to motor-truck trailers, and many even have sleeper compartments. A motor truck may be less likely to be occupied than a building, but is a motor truck — especially considering its cargo — less likely to be occupied than a food truck, passenger rail car, or mobile home used as a classroom? And, whether occupied or not, can we conclude that the risk of violent confrontation with one who investigates a burglary in progress is somehow less where a motor truck is involved? The majority opinion provides little support for answering these questions in the affirmative, and yet its decision to vacate Prater’s sentence relies entirely on these distinctions. The risk, in the typical case, is “comparable,” James v. United, States, 550 U.S. 192, 212, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007), to that posed by burglary of a houseboat, mobile home, food truck, and passenger train car, and comparable to that posed by burglarizing a building in “its ordinary meaning.”
Our cases are mostly unhelpful in conducting this elements-speeific inquiry. The fact that we held in United States v. Coleman, 655 F.3d 480, 482 (6th Cir.2011), that burglary of an “occupied structure” or “a separately secured or separately occupied portion of an occupied structure,” presented a risk similar to that of generic burglary tells us nothing about the nature of the risk posed by unlawfully entering a motor truck. Similarly, finding that trespassing in the “habitation” of another, see Skipper, 552 F.3d at 492-93, or in “places in which a person is actually or likely to be present,” see United States v. Lane, 909 F.2d 895, 903 (6th Cir.1990), involves a risk similar to that inherent in generic burglary does not answer the question whether, for instance, trespassing in a food truck, motor truck, or passenger rail car presents similar risks.
Despite acknowledging that the modified categorical approach is the correct approach, the majority opinion surveys the caselaw and concludes, “We are aware of no case in which this court has held that a divisible statute, containing an alternative form of burglary similar to the one at issue here, categorically qualified as a predicate offense under the residual clause.” Maj. Op. at 517. But three sentences later the majority opinion acknowledges that United States v. Andrello, 9 F.3d 247, 249-50 (2d Cir.1993) (per curiam) did just that, and yet it correctly dismisses Andrello for “failing] to apply the modified categorical approach.” Maj. Op. at 517. As the majority admits, “ACCA decisions do not control beyond the specific statute under consideration in the jurisdiction issuing the ruling.” Maj. Op. at 517. The modified categorical approach, when used under the residual clause, requires an elements-spe-cifie inquiry. The fact that no other court has yet to use this inquiry on a set of elements similar to those at issue here is irrelevant.
I respectfully dissent.

. Prater relied on these same "previously raised” objections during the sentencing colloquy too.

. To the extent that the district court judge’s statements are relevant, the judge’s order overruling Prater's objections to the PSR describes Prater’s objections as follows:
Therefore, the defendant is properly designated an armed career criminal. His objections present no cogent argument to the contrary. Instead, the defendant summarily alludes to attacks on his prior convictions that have been previously rejected by this court. The defendant's arguments regarding vagueness, overbreadth, restoration of rights, and the Second and Eighth Amendments have already been addressed by this court and will not be discussed further.