RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0216p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 13-5039

v.

PAUL DOUGLAS PRATER,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 2:11-cr-00027-1—Robert Leon Jordan, District Judge.

Decided and Filed: September 2, 2014

Before: BOGGS, BATCHELDER, and WHITE, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN
TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Robert M. Reeves, UNITED
STATES ATTORNEY'S OFFICE, Greeneville, Tennessee, for Appellee.

BOGGS, J., delivered the opinion of the court, in which WHITE, J., joined.
BATCHELDER, J. (pp. 23–28), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge. This case presents the question whether a conviction for third-
degree burglary under New York law is categorically a "violent felony" under 18 U.S.C.
§ 924(e), commonly referred to as the Armed Career Criminal Act (ACCA). A jury convicted
Paul Prater of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).

1

The district court determined that Prater qualified for an enhanced mandatory minimum sentence under the ACCA and an increased offense level under the Guidelines Manual. It relied on Prater's prior convictions for New York third-degree burglary and attempted third-degree burglary. The district court held that these offenses categorically qualify as violent felonies. Because this was error and because the district court did not apply the Supreme Court's "modified categorical approach" to determine whether the version of the crimes for which Prater was convicted qualified as a violent felony, *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013), we vacate the district court's sentence and remand for resentencing.

I

Following a jury trial, Paul Prater was convicted of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). Prater's presentence report[1] determined that U.S.S.G. § 2K2.1 provided the base offense level for the sentencing of offenses under 18 U.S.C. § 922(g). Because Prater had at least two prior felony convictions for what the Manual refers to as "crimes of violence," his base offense level was 24, under § 2K2.1(a)(2). The presentence report also determined that Prater qualified as an armed career criminal, under 18 U.S.C. § 924(e)(1), because he had at least three convictions for a "violent felony" committed on different occasions. This finding subjected Prater to a mandatory minimum sentence of fifteen years of imprisonment. § 924(e)(1). It also raised Prater's offense level to 33, under § 4B1.4(b)(3)(B). The presentence report assigned Prater twenty criminal-history points, which corresponded to a criminal-history category of VI. An offense level of 33 and a criminal-history category of VI resulted in a guideline range of 235–293 months of imprisonment.

The presentence report identified four predicate convictions qualifying Prater as an armed career offender under § 924(e)(1): 1) a February 19, 1980, conviction for attempted third-degree burglary; 2) a February 24, 1988, conviction for third-degree robbery; 3) a February 24, 1988, conviction for third-degree burglary; and 4) a March 30, 2000, conviction for attempted third-degree burglary. All four convictions were in Niagara County Court in New York. Prater's two February 24, 1988, convictions were for conduct committed on different occasions.

---

[1]The United States Probation Office prepared the report using the 2011 edition of the United States Sentencing Commission Guidelines Manual.

Prater objected to the presence report's classification of him as an armed career criminal under 18 U.S.C. § 924(e) and § 4B1.4. He stated that he relied on arguments previously raised. Prater briefly summarized these arguments: that his right to bear arms had been suspended, not revoked, under New York law; that § 922(g)(1) was vague and overbroad; and that the provision of the Armed Career Criminal Act, codified at § 922(e)(1), violated the Eighth Amendment prohibition on cruel and unusual punishment. The district court overruled Prater's objections. It determined that Prater was an armed career criminal because each of his predicate offenses qualified as a "violent felony" under § 924(e).

On January 8, 2013, the district court held a sentencing hearing. At sentencing, Prater renewed his previously raised objections but did not raise any new objections. The district court did not rule on Prater's objections, stating that it had already done so. It relied on the presence report's determination that Prater's guideline range was 235–293 months. The district court also determined that Prater was subject to a 180-month mandatory minimum sentence. After allocution and a brief reference to the § 3553 factors, the district court sentenced Prater to 264 months of imprisonment.

On appeal, Prater argues that he lacked the predicate offenses necessary to qualify as an armed career criminal under § 924(e)(1) and § 4B1.4. He also argues that the sentencing court erred in deeming these same offenses "crimes of violence" when assigning Prater a base offense level under § 2K2.1. Specifically, he argues that his New York convictions for third-degree burglary and attempted third-degree burglary do not satisfy the statutory definition of "violent felony" under § 924(e)(2)(B) and the Manual's definition of "crime of violence" under § 4B1.2(a).

The issue is important because were Prater not sentenced as an armed career criminal, his base offense level would have been 24 under § 2K2.1(a)(2)—presuming Prater has the same criminal history score of 20 and, thus, is in criminal history category VI—and his guideline range would have been 100–125 months. He also would not be subject to the ACCA's 180-month mandatory minimum sentence. If Prater's challenged convictions qualify as neither "violent felonies" nor "crimes of violence," then Prater's base offense level would be 20 under

§ 2K2.1(a)(4) and his guideline range would be 70–87 months—well under the 264-month sentence that Prater received.

II

A

The parties dispute, as an initial matter, our standard of review on appeal.  Prater asserts that we review do novo both whether a prior conviction constitutes a "violent felony" under § 924(e) and a "crime of violence" under the Manual.  Appellant Br. 8.  The government agrees that review is ordinarily de novo but argues that we must review Prater's claims only for plain error because Prater failed to raise his appellate claims below.  At issue is whether Prater raised his current claims before the sentencing court.

To preserve a claim and thus avoid plain-error review, a party must "object[t] to the court's action" and also provide "the grounds for that objection."  Fed. R. Crim. P. 51(b).  A party must "apprise the trial judge of the ground now asserted on appeal."  *United States v. Mayes*, 512 F.3d 637, 653 (6th Cir. 1975).  For a claim of error to "constitute a sufficiently articulated objection," a party must "object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004); *accord United States v. Indiviglio*, 352 F.2d 276, 279 (2d Cir. 1965) (en banc) (origins of the reasonable-degree-of-specificity standard).  The requirement that "the specific ground for objection be made clear is to afford the trial judge an opportunity to remedy any claimed error and to afford the government an opportunity to come forward with evidence relative to the claim."  *United States v. Bryant*, 480 F.2d 785, 792 (2d Cir. 1973).

Here, Prater submitted to the probation office a two-paragraph statement objecting to the presentence report.  In the first paragraph, Prater stated that he "objects to his designation as an Armed Career Criminal under 18 U.S.C. § 924(e) and USSG § 4B1.4."  He proceeded to list the four predicate offenses relied on by the presentence report, providing the date of conviction, the offense of conviction, and the date of offense.  For each conviction, Prater also cited to the specific paragraph of the presentence report that classified the conviction as a predicate for

armed-career-criminal purposes. In the second paragraph, Prater stated that he "relies on the arguments previously raised on this issue" and referred to prior pleadings.[2] Those prior pleadings do not touch on whether third-degree burglary and attempted third-degree burglary under New York law constitute "violent felonies." Prater himself summarized the arguments in those prior pleadings but did not mention his third-degree-burglary argument in this summary.

Although the second paragraph of Prater's objection statement discusses *additional* issues, the first paragraph, albeit barely, properly preserves Prater's violent-felony claim. First, the language of Prater's sentencing memorandum states that he "objects to his *designation* as an Armed Career Criminal under 18 U.S.C. § 924(e) and USSG § 4B1.4." (emphasis added). This can only mean that Prater objected to the presentence report because he did not believe that he was "a person who violate[d] section 922(g) of [Title 18 of the United States Code] and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." § 924(e)(1). Second, the probation officer, in responding to Prater's objections in an addendum to the presentence report, felt it important to state that "[t]he appeals courts have found [Prater's convictions] to be qualifying convictions as 'crimes of violence.'" Third, the district court, in denying Prater's objections, specifically stated that "each of [Prater's] violations of New York law is a 'violent felony' for purposes of the ACCA." It also cited two Second Circuit cases that discuss whether certain crimes constitute violent felonies and crimes of violence. Thus, the district court clearly understood the basis for this objection and addressed it. Here, there is no need to consider whether Prater's objection "*would have* adequately apprised the trial court of the true basis of [the] objection," *Bostic*, 371 F.3d at 871, because it *actually* apprised the trial court of such. Because the first paragraph of Prater's sentencing memorandum did, *in fact*, apprise the trial court of the basis for his current claim on appeal—and thus afforded the sentencing court an opportunity to remedy the claimed error—we find that Prater's violent-felony is properly preserved.

---

[2]Specifically, Prater refers to two prior motions to dismiss the indictment. In the first motion, Prater argued that he lacked the requisite mens rea because he did not know it was illegal for a convicted felon to possess ammunition and that the ACCA's 15-year mandatory minimum sentence violates the Eighth Amendment. The district court addressed these arguments and denied the motion. In the second motion, Prater argued that his prior convictions merely suspended and did not revoke his civil rights under New York law; he also argued that prohibiting a felon from possessing ammunition violates the Second Amendment. The district court denied this motion as well.

The exchange between Prater's counsel and the district court at sentencing does not affect this conclusion. At sentencing, the district court asked Prater's counsel if he had reviewed the presentence report with Prater. Counsel informed the court that he had "no objections or complains *other than what we previously raised.*" (emphasis added). The district court stated it had "already ruled on [Prater's] objections." It was only after noting that the court had previously addressed Prater's objections did the court ask Prater's counsel if he agreed that the ACCA imposed a 180-month mandatory minimum sentence. Although Prater's objection to his designation as an armed career criminal, contained in his objections to the presentence report, was sparse, the objection was clearly made, as the district court understood Prater's objection, addressed it on the merits, and overruled it.

Not so, however, with Prater's second claim, that the district court erred in determining his base offense level under § 2K2.1(a)(2), which required finding that he had at least two prior felony convictions for a "crime of violence." Nothing in the record could have suggested to the district court with a "reasonable degree of specificity," *Bostic*, 371 F.3d at 871, that a ground for Prater's objection was that his prior convictions did not constitute "crimes of violence" under § 4B1.2(a). We, therefore, review Prater's crime-of-violence claim for plain error.

B

Because Prater's violent-felony claim is preserved, we review de novo the district court's legal conclusions underlying its application of the armed-career-criminal adjustment under § 4B1.4 and of the mandatory minimum sentence under § 924(e)(1). *See United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). Because Prater did not preserve his crime-of-violence claim, it is forfeited, and we review it for plain error. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc).

III

The Guidelines Manual instructs sentencing courts, when calculating a defendant's guideline range, to determine the offense-guideline section applicable to the offense of conviction. § 1B1.1(a)(1). The presentence report, adopted by the district court without change, correctly determined that § 2K2.1 is the guideline section applicable to convictions under

18 U.S.C. § 922(g).  S*ee* U.S.S.G. app A.  This section assigns an offense level for defendants convicted of unlawful possession of ammunition.  After a sentencing court determines the appropriate offense-guideline section, the Manual instructs the court to determine the base offense level.  § 1B1.1(a)(2).   Section 2K2.1(a) specifies base offense levels based on the nature of a defendant's offense.  The presentence report correctly determined that defendants receive a base offense level of 24 if they possess ammunition as a felon with at least two prior convictions for either a crime of violence or a controlled-substance offense.  § 2K2.1(a)(2).  The presentence report noted that Prater had prior felony convictions for attempted third-degree burglary and for third-degree robbery.  In assigning Prater a base offense level of 24 under § 2K2.1(a)(2), the presentence report necessarily concluded that these prior convictions constituted "at least two felony convictions of . . . crime[s] of violence."  § 2K2.1(a)(2).  On appeal, Prater identifies this conclusion as error and argues that his prior convictions do not qualify as "crimes of violence."

After a sentencing court determines a defendant's base offense level, it must determine applicable adjustments based on criminal history.  § 1B1.1(a)(6).  These include whether a defendant qualifies as what the Manual refers to as a "career offender" or an "armed career criminal." §§ 4B1.1, 4B1.4.  In Prater's case, the presentence report determined that he met the Manual's definition of "armed career criminal" because he was "subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)."  § 4B1.4(a).  Consequently, the presentence report adjusted Prater's offense level upward to level 33.  Prater identifies this adjustment as error because, he argues, he did not qualify as an armed career criminal under § 4B1.4(a) and, thus, also under § 924(e).

Because we review Prater's armed-career-criminal claim de novo and his crime-of-violence claim only for plain error and because case law treats the two terms similarly, we first address whether Prater properly qualified as an armed career criminal.

### A.  "Armed Career Criminal" and "Violent Felony"

Prater's total offense level of 33 derived from § 4B1.4, which provides an offense-level adjustment for defendants whose criminal history qualifies them as "armed career criminals." The Manual's definition of "armed career criminal" incorporates a standard provided by statute.

A defendant is an "armed career criminal" for § 4B1.4 purposes if he "is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)."

Section 924(e), in turn, subjects defendants convicted under § 922(g) to an enhanced mandatory minimum sentence of fifteen years if they have at least three prior convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another." § 924(e)(1). This case concerns what constitutes a "violent felony" under § 924(e)(1), which determines whether a defendant is subject to § 4B1.4's adjustment as an armed career criminal. Prater argues that his New York convictions for third-degree burglary and attempted third-degree burglary do not constitute "violent felonies" under § 924(e).

The statute itself provides a definition of "violent felony." A "violent felony" is any crime punishable for a term greater than one year that "[1] has as an element the use, attempted use, or threatened use of physical force against the person of another; or [2] is burglary, arson, or extortion, involves use of explosives, or [3] otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B).

Prater's presentence report, adopted by the district court, determined that Prater had four prior New York convictions that serve as predicate offenses for armed-career-criminal purposes. They are: 1) a February 19, 1980, conviction for attempted third-degree burglary; 2) a February 24, 1988, conviction for third-degree robbery; 3) a February 24, 1988, conviction for third-degree burglary; and 4) a March 30, 2000, conviction for attempted third-degree burglary.[3] Prater does not dispute that the third-degree-robbery conviction is a predicate offense. At issue is whether he has two more—i.e., whether third-degree burglary and attempted third-degree burglary, under New York law, are "violent felonies."

Under New York law, "[a] person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." N.Y. Penal Law § 140.20. A "building" includes "its ordinary meaning" and also "any structure,

---

[3]The district court adopted the presentence report without change. But in overruling Prater's objection that his prior convictions did not qualify him as an armed career criminal, the district court appears to have relied only on the latter three convictions. It did not mention the February 19, 1980, conviction for attempted third-degree burglary.

vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein, or used as an elementary or secondary school, or an inclosed motor truck, or an inclosed motor truck trailer." § 140.00(2).

This statute does not "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); *cf. Johnson v. United States*, 559 U.S. 133 (2010) (interpreting the ACCA's "physical-force clause"). We determine, then, whether the statute falls within the Armed Career Criminal Act's "enumerated-offense clause"—i.e., "is burglary, arson, or extortion, involves use of explosives"—or whether the statute falls within the act's "residual offense"—i.e., "otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B)(ii).

### 1. The Enumerated-Offense Clause

A prior conviction qualifies as an ACCA predicate offense if it "is burglary, arson, or extortion, involves use of explosives." § 924(e)(2)(B)(i). "To determine whether a past conviction is for one of those crimes," courts employ the "categorical approach," in which they "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). "The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Ibid.*

The word "burglary" in § 924(e) is a term of art. The Supreme Court has determined that "burglary" does not mean "whatever the State of the defendant's prior conviction defines as burglary." *Taylor v. United States*, 495 U.S. 575, 580, 590–92 (1990). Nor does it simply carry its definition at common law: "the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony." *Id.* at 580 n.3, 592–96. What is determinative in deciding whether a crime qualifies is whether it "ha[s] certain specified elements, not by [whether it] happened to be labeled 'burglary.'" *Id.* at 588.[4] The Supreme Court defined

---

[4]To the extent relevant, we note that a prior version of the ACCA included a definition of "burglary." *See Taylor*, 495 U.S. at 581. Congress omitted the definition when it amended the statute. *See id.* at 582. The Supreme Court suggested that this "may have been an inadvertent casualty of a complex drafting process." *Id.* at 589–90. The Court has already meticulously provided the legislative history of the statutory term "burglary," *id.* at 581–90,

"burglary" by reference to "the generally accepted contemporary meaning of [the] term" and to "the criminal codes of most States." *Id.* at 596, 598. It concluded that "burglary," as used in § 924(e), is a crime that has "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599. The Supreme Court refers to this crime as "generic burglary." *Descamps*, 133 S. Ct. at 2283. This definition *does not* require that a burglary statute have as an element that a person be armed, that a building be occupied, or that force be involved. *See id.* at 597.

Certain penal laws are what the Supreme Court calls "divisible" offenses because they "se[t] out one or more elements of the offense in the alternative." *Descamps*, 133 S. Ct. at 2281. When a statutory code "list[s] potential offense elements in the alternative," it "renders opaque which element played a part in the defendant's conviction." *Id.* at 2283. The Court gave, as an example of a "divisible" statute, one "stating that burglary involves entry into a building *or* an automobile." *Id.* at 2281.

Under this understanding, third-degree burglary under New York law is a divisible offense because it "comprises multiple, alternative versions of the crime." *Id.* at 2284; *see United States v. Covington*, 738 F.3d 759, 764 (6th Cir. 2014) (Michigan prison-escape statute divisible under *Descamps* because it "lists several, alternative ways to violate the statute"); *United States v. Hockenberry*, 730 F.3d 645, 669 (6th Cir. 2013) (Pennsylvania burglary statute divisible under *Descamps* because it "lists alternative elements in the statutory text"). A person commits third-degree burglary in New York when he "knowingly enters or remains unlawfully" in "any structure, vehicle, *or* watercraft . . . *or* an inclosed motor truck, *or* an inclosed motor truck trailer."[5] §§ 140.20, 140.00(2) (emphasis added). The offense is not rendered an "indivisible" statute—one "not containing alternative elements," *Descamps*, 133 S. Ct. at 2281— simply because the prohibitory provision itself, § 140.20, uses only the word "building." Under New York law, the statutory definition of "building" in § 140.00(2) is "applicable" to the

---

and so we need not repeat it here, *see id.* at 603 (Scalia, J., concurring in part and concurring in the judgment) ("discern[ing] no reason for devoting 10 pages of [the] opinion to legislative history, except to show that we have given this case close and careful consideration" and urging that "[w]e must find some better way of demonstrating our conscientiousness.").

[5]Watercraft and trucks are kinds of vehicles, but the statute is not redundant because, as explained below, it only applies to certain kinds of vehicles and watercraft, whereas it applies to *all* "inclosed motor truck[s]" and "inclosed motor truck trailer[s]."

prohibitory provision.  § 140.00.  A state's penal code structure does not erase the Supreme Court's developed distinction between "divisible" and "indivisible" offenses by distributing elements across various statutory provisions.  Whether an offense is "divisible" turns on its actual elements, *Descamps*, 133 S. Ct. at 2284–85—not on whether a state provides separate labels for different elements.  To conclude otherwise would mean that the burglary offense criminalized under New York law would be indivisible in a state that codified its laws like New York and would be divisible in a state that imported the definition of "building" directly into the prohibitory provision.  It is this exact state-by-state variance that the Court has sought to avoid in its ACCA jurisprudence.  *See Taylor*, 495 U.S. at 590–92.  Third-degree burglary under New York law, then, is a divisible offense.

In order to conduct the compare-the-elements test when a divisible statute is involved, courts employ what the Supreme Court has "labeled (not very inventively) the 'modified categorical approach.'"  *Decsamps*, 133 S. Ct. at 2281.  This approach is a two-step process. First, courts determine whether "one alternative (say, a building) matches an element in the general offense, but [an]other (say, an automobile) does not."  *Ibid.* (parentheticals in original). If that is the case, courts can "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction."  *Ibid.*  Only then can the court "do what the categorical approach demands: compare the elements of the crime of conviction . . . with the elements of the generic crime."  *Ibid.*

Here, whether the elements of New York third-degree burglary match those of generic burglary depends on which alternative version of the crime is used.  The alternative of third-degree burglary of a building, with its "ordinary meaning," matches the generic offense. § 140.00(2).  But the alternatives of third-degree burglary of a vehicle, watercraft, inclosed motor truck, and inclosed motor-truck trailer do no match the generic offense.  It makes no difference that New York has defined "building" to mean vehicles and watercraft.  The Court's use of "building" in its definition of generic building rested on "generic, contemporary meaning." *Taylor*, 495 U.S. at 598.  States cannot bring offenses within the Court-defined "generic crime" by giving terms idiosyncratic meaning.  A state may presumably, if it chooses, define the term

"entry into or remaining in" to mean "gazing upon" in its burglary statute; but the elements of that burglary statute would not match those of "generic burglary." So too here.[6]

Because one alternative of New York third-degree burglary does not match "generic burglary," the modified categorical approach calls for looking beyond the mere fact of conviction. *Descamps*, 133 S. Ct. at 2281. The sentencing court may consult a limited amount of material to determine the nature of a prior conviction: "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). Here, the district court did not look to any *Shepard* materials to determine whether Prater's prior burglary convictions were for burglary of a "building or structure." *Taylor*, 495 U.S. at 495. The district court, in overruling Prater's objections to counting his prior convictions as predicate offenses, noted that it "has before it three certificates of disposition." These certificates of disposition were not part of the record below, nor are they part of the record on appeal.[7] Copies of these "certificates of disposition" provided to this court by Prater, however, appear to show only the mere fact that Prater was convicted of third-degree burglary, third-degree robbery, and attempted third-degree burglary. *See* Appellant App. 22–24. These documents, even if they were part of the record, are insufficient for the district court to conclude that Prater was convicted of an offense with elements "the same as, or narrower than, those of the generic offense." *Descamps*, 133 S. Ct. at 2281. In light of the record before the district court, third-degree burglary and attempted third-degree burglary do not qualify as "violent felonies" under the ACCA's enumerated-offense clause.

The government asserts that "undisputed facts in the record indicate [Prater] actually burglarized a building in the traditional sense, and thus committed a generic burglary." Appellee Br. 10. The government cites and quotes Prater's presentence report. Prater's presentence report

---

[6]Additionally, the Supreme Court has repeatedly treated a burglary statute criminalizing burglary of a building or a vehicle as the quintessential example of a case where one alternative form of the crime does not match generic burglary. *See Descamps*, 133 S. Ct. at 2281, 2284; *Chambers v. United States*, 555 U.S. 122, 126 (2009); *Shepard v. United States*, 544 U.S. 13, 15–16 (2005); *Taylor*, 495 U.S. at 602.

[7]The government asserts that the record contains "one *Shepard* document—a New York certificate of disposition—for Defendant's prior third-degree burglary conviction." Appellee Br. 9. It cites to entry 90 on the district-court docket. That entry contains the district court's order overruling Prater's objections, which references the court "ha[ving] before it three certificates of disposition," but it does not contain the certificates of disposition.

is not a proper *Shepard* document because Prater did not assent to its factual statements. *See Shepard*, 544 U.S. at 16. Moreover, the government fundamentally misconstrues how the modified categorical approach works. The Supreme Court is emphatic that sentencing courts, in conducting this analysis, must not focus on the facts in the record and the acts that a defendant actually committed. *See Descamps*, 133 S. Ct. at 2283, 2286–91. "The key, [the Court has] emphasized, is elements, not facts." *Id.* at 2283. It does not matter if "the defendant *actually committed* the offense in its generic form." *Ibid.* (emphasis added). What is determinative is whether a defendant "has three 'prior convictions' for a violent felony—not [whether] a defendant . . . has thrice committed such a crime." *Id.* at 2287. "[T]urn[ing] an elements-based inquiry into an evidence-based one . . . has no roots [in the Court's] precedents . . . [and] subverts those decisions, conflicting with each of the rationales supporting the categorical approach and threatening to undo all its benefits." *Ibid.* To be clear: the proper analysis entails comparing "the *elements* of the crime of conviction . . . with the *elements* of the generic offense." *Descamps*, 133 S. Ct. at 2281 (emphasis added). Reliance on proper *Shepard* documents alone may make this inquiry difficult or impossible, "[b]ut absence of records will often frustrate application of the modified categorical approach." *Johnson*, 130 S. Ct. at 145.

Additionally, the government defends its failure to present *Shepard* evidence by stating that "it had no incentive to obtain that documentation previously given [Prater's] agreement that his prior convictions were ACCA predicates." Appellee Br. 10. This conception of the government's obligation at sentencing is backwards. It is the "*government* [that] bears the burden of proof with regard to the various penalties it seeks to have imposed under the sentencing guidelines." *United States v. Cowart*, 90 F.3d 154, 159 (6th Cir. 1996). Prior to sentencing, the government filed a sentencing memorandum in which it affirmatively concurred in the presentence report's recommendation that Prater's total offense level was 33 under § 4B1.4(b)(3)(B). The "incentive" the government had was that it bore the burden to justify sentencing Prater as an armed career criminal. Prater objected to his designation as an armed career criminal, and the government did not respond. Additionally, the government points to nowhere in the record where Prater "agree[d] that his prior convictions were ACCA predicates." Appellee Br. 10. Prater, in fact, objected to this point.

## 2.  The Residual Clause

a

A prior conviction qualifies as a "violent felony" under the ACCA's "residual clause" if it "involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B)(ii).  We must determine whether third-degree burglary and attempted third-degree burglary under New York law meet this criterion.  At the outset, we note that the Supreme Court has held that the residual clause does not categorically exclude all attempt offenses.  *James*, 550 U.S. at 200.

Just as courts employ the categorical approach to determine whether a prior conviction falls within the enumerated-offense clause, *Descamps*, 133 S. Ct. at 2281, so too must they employ the categorical approach to determine whether an offense qualifies as a predicate under the residual clause.[8]  *James*, 550 U.S. at 202; *accord United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010).  The inquiry is the same: it involves comparing the elements of the prior offense of conviction with the element contained in the residual clause.  Courts must ask "whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of the particular offender."  *James*, 550 U.S. at 202.  Here, the "pivotal question" is whether knowingly entering or remaining unlawfully in a "building"—an ordinary building, a vehicle, a watercraft, an inclosed motor truck, or an inclosed motor-truck trailer—with the intent to commit a felony therein is conduct that presents a serious risk of physical injury to another.  *Id.* at 203.

As explained above, third-degree burglary under New York law is a divisible offense.  Consider three alternative versions of the elements of the offense provided by statute.  One version requires breaking into a building in the ordinary sense (i.e., "generic burglary").  Another

---

[8]Since the Supreme Court decided *Descamps* last year, we have repeatedly applied the modified categorical approach to divisible statutes when conducting a residual-clause analysis.  *See United States v. Mitchell*, 743 F.3d 1054, 1060–67 (6th Cir. 2014) (convictions under Tennessee robbery statutes are categorically violent felonies under the residual clause); *United States v. Covington*, 738 F.3d 759, 764–65 (6th Cir. 2014) (convictions under Michigan prison-escape statute are not categorically violent felonies under the residual clause); *United States v. Denson*, 728 F.3d 603, 608–10 (6th Cir. 2013) (convictions under Ohio inciting-violence statute are not categorically crimes of violence under the residual clause but defendant's conviction a crime of violence in light of *Shepard* documents); *United States v. Johnson*, 530 F. App'x 528, 532–33 (6th Cir. 2013) (convictions under Tennessee robbery statutes are not categorically violent felonies under the residual clause but defendant's robbery conviction a violent felony in light of *Shepard* documents).

requires breaking into a vehicle or watercraft used for lodging, business, or schooling. A third version requires breaking into an inclosed motor truck or an inclosed motor-truck trailer, regardless of how those objects are used.

The Supreme Court has already determined that generic burglary presents an "inherent potential for harm to persons." *Taylor*, 495 U.S. at 588. "The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." *Ibid.* The Court has also determined that attempted generic burglary presents the same risk: "[i]nterrupting an intruder at the doorstep while the would-be burglar is attempting a break-in creates a risk of violent confrontation comparable to that posed by finding him inside the structure itself." *James*, 550 U.S. at 203.

The Supreme Court has not answered whether breaking into either a vehicle or watercraft used for lodging, business, or schooling or breaking into an inclosed motor truck or motor-truck trailer presents the same risk as generic burglary. The Court has, however, provided a framework. In *James*, the Court considered whether a prior conviction for attempted burglary under Florida law qualified as a predicate under the residual clause. *Id.* at 195. The Florida law encompassed generic burglary and also, similar to the New York law, provided the alternative offense element of unlawful entry onto the curtilage of a dwelling. *Id.* at 212. The Court first held that attempted generic burglary fell within the residual clause. *Id.* at 211–12. The Court then considered whether attempted unlawful entry of the curtilage would also fall within the residual clause. *Id.* at 212. At the outset, the Court acknowledged that "the inclusion of the curtilage takes Florida's underlying offense of burglary outside the definition of 'generic burglary.'" *Ibid.* To resolve this question, the Court asked whether the "risk posed by an attempted entry of the curtilage is comparable to that posed by the attempted entry of a structure." *Ibid.*[9] Our, inquiry, then is whether the risk posed by breaking into a vehicle or watercraft used for lodging, business, or schooling or breaking into an inclosed motor truck or motor-truck trailer is "comparable" to the risk posed by generic burglary.

---

[9]The answer is yes. *James*, 550 U.S. at 213.

Consider first the alternative form of third-degree burglary in New York that has as its elements knowingly entering or remaining unlawfully in a vehicle or watercraft used for lodging, business, or schooling. Common sense informs us that vehicles and watercraft differ, in certain respects, from the ordinary meaning of buildings. Vehicles and watercraft, for instance, may be mobile, whereas buildings generally are not; vehicles and watercraft may be roofless, whereas buildings are generally enclosed. But a review of the Supreme Court's cases suggests that the salient feature of "building" in the definition of generic burglary is the idea that it is a place where people live, congregate, or are likely to be found. For example, the Court has said that burglary of a building entails the possibility of a violent confrontation with an "occupant" or "caretaker." *Taylor*, U.S. at 588. It has also described burglary as "entering onto another's property" and described a burglar as an "intruder at the doorstep." *James*, 550 U.S. at 204. New York specifically restricts this alternative form of third-degree burglary to vehicles or watercraft "used for overnight lodging of persons, or used by persons for carrying on business therein, or used as an elementary or secondary school." § 140.00(2). Thus, the offense encompasses unlawful entry of a houseboat but not a recreational canoe, of a food truck but not a recreational seaplane, of a mobile home used as a classroom but not a school bus. By restricting its application to places where people are likely to be found, New York's burglary statute, as applied to vehicles and watercraft, is sufficiently similar to generic burglary. The risk posed is comparable to that of generic burglary.

Now consider the alternative form of third-degree burglary that has as its elements knowingly entering or remaining unlawfully in an inclosed motor truck or motor-truck trailer. There is no restriction that the motor truck or motor-truck trailer be used for lodging, business, or schooling. Consequently, the risk of a burglar encountering another person—and of a "violent confrontation" ensuing, *Taylor*, 495 U.S. at 588—is significantly less. Breaking into a motor truck or a motor-truck trailer of course entails *some* risk of physical injury to a person, but that risk is simply not "comparable" in severity or likelihood to the risk posed by generic burglary.

The government maintains that the "risk involved in the commission of a New York third-degree burglary or attempted third-degree burglary is *exactly the same kind of risk* as is involved in the commission of [*Taylor*'s] generic burglary." Appellee Br. 12 (emphasis added).

That assertion is simply not credible. A motor truck is less likely to be occupied than a building, and burglarizing an average motor truck, let alone a trailer, wherever situated, likely does not pose the same risk as burglarizing a building.[10] The government then asserts that "*most of the* 'buildings' which New York prohibits burglarizing are places where occupants are likely to be present." Appellee Br. 14 (emphasis added). Most is not all. We have previously held that even a single alternative set of elements in a statute that does not fall within the residual clause prevents a prior conviction from serving as a predicate. *See United States v. Mosley*, 575 F.3d 603, 607–08 (6th Cir. 2009) (prior conviction for state law applying to a person who "assaults, batters, wounds, *obstructs*, opposes, or endangers" a law-enforcement officer did not serve as a predicate because "obstructs" was a possible element).

The government also argues that breaking into an inclosed motor truck or motor-truck trailer presents *some* "risk of a violent confrontation between innocent third-parties and the burglar." Appellee Br. 15. But this is not the dispositive inquiry. The question is whether that risk is "*comparable* to that posed by . . . entry of a structure." *James*, 550 U.S. at 212. It is not. Just as a crime—i.e., a definite list of given elements—need not present a risk of injury in all cases to qualify as a violent felony, so too does some possibility of injury not suffice to make a crime a predicate. *See id.* at 207. There are, of course, ways of committing even generic burglary that do not "pose a realistic risk of confrontation or injury to anyone—for example, a break-in of an unoccupied structure located far off the beaten path and away from any potential intervenors." *Ibid.* But analysis under the residual clause rests on "inherently probabilistic concepts." *Ibid.* "[T]he proper inquiry . . . is whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another." *Id.* at 208 (emphasis added). According to the government, "[t]he confrontation that might occur between the burglar [of a motor truck or motor-truck trailer] and the non-occupant investigator is no less serious than the confrontation that might occur between the burglar and an occupant of a structure." Appellee Br. 15. Although there are strong reasons to doubt this,[11] even if the

----

[10]Burglarizing an unoccupied motor truck probably also does not even present the same risk as burglarizing an unoccupied building, for caretakers and police officers may be more likely to respond to a building break-in.

[11]The risk posed by burglary of a building (in the traditional sense) is particularly acute because of the possibility that an occupant will be surprised by a burglar and caught off-guard and defenseless. The very definition of burglary at common law rested on this premise. As noted above, burglary at common law was the breaking and

government's assertion is true, it does not show that the risk posed by motor-truck burglary is comparable in likelihood to that posed by generic burglary. Here, the mere possibility of a confrontation between burglar and bystander during a break-in of a motor truck or motor-truck trailer is insufficient to bring this alternative form of third-degree burglary within the residual clause.

We therefore vacate Prater's sentence and remand to allow the district court to consider how to categorize the crimes Prater was convicted of. We have sometimes said that "[i]f it is possible to violate the statute in a way that would constitute a crime of violence and in a way that would not, the court may consider the indictment, guilty plea, or similar documents to determine whether they *necessarily* establish the nature of the prior conviction." *Gibbs*, 626 F.3d at 352 (emphasis added). In light of recent Supreme Court decisions, we clarify that this is not quite right. "One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury." *James*, 550 U.S. at 208. We clarify that the inquiry is not whether it is possible for a defendant to commit a crime in a way that would not be a violent felony. As the Supreme Court said last year, the sentencing court must "look only to the fact that the defendant ha[s] been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Descamps*, 131 S. Ct. at 2286. On remand, the sentencing court may look to *Shepard* documents only to consider which category of crime Prater was convicted of. It may turn out that Prater was convicted of burglary of a building with its "ordinary meaning" or of a vehicle or watercraft used for lodging, business, or schooling. The district court should have the opportunity to decide this in the first instance. *See Mosley*, 575 F.3d at 608.

b

Our own prior decisions analyzing state burglary laws support the decision we reach. In *United States v. Coleman*, 655 F.3d 480 (6th Cir. 2011), we held that convictions for third-degree

---

entering of the dwelling house of another in the nighttime with the intent to commit a felony therein. The "nighttime" element was required not because eighteenth-century English jurists were afraid of the dark but because of the increased probability that occupants would be asleep and, thus, caught off-guard by intruders. As Blackstone explained, "[T]he malignity of the offence [of burglary] does not so properly arise from its being done in the dark, as at the dead of night; when all creation, except beasts of prey, are at rest; when sleep has disarmed the owner, and rendered his castle defenceless." 4 William Blackstone, Commentaries *224.

burglary and attempted third-degree burglary under Ohio law qualified as violent felonies under the residual clause. *Id.* at 483. The Ohio law applied only to "an occupied structure or . . . a separately secured or separately occupied portion of an occupied structure." *Id.* at 482. Our decision rested on the conclusion that "burglary of an 'occupied structure' creates a risk of physical injury that is similar to the risk posed by generic burglary." *Id.* at 480. So too with our analysis of fourth-degree burglary under Ohio law. That offense constituted a "crime of violence" because it "requires that the defendant trespass in the 'habitation' of another person" and because it "sets forth a recipe for precisely the kind of surprise confrontation whose risk of physical injury underlay the Supreme Court's holding in *James*." *United States v. Skipper*, 552 F.3d 489, 492–93 (6th Cir. 2009). Other decisions have rested on similar grounds. *See United States v. Bureau*, 52 F.3d 584, 591–93 (6th Cir. 1995) (conviction for Tennessee attempted third-degree burglary was a predicate under the residual clause when statute applied only to "the breaking and entering into a business house, outhouse, or any other house of another"); *United States v. Lane*, 909 F.2d 895, 909 (6th Cir. 1990) (conviction for Ohio attempted burglary was a predicate under the residual clause because the burglary statute required trespass in "places in which a person is actually or likely to be present"). We are aware of no case in which this court has held that a divisible statute, containing an alternative form of burglary similar to the one at issue here, categorically qualified as a predicate offense under the residual clause.

We are not persuaded by contrary results reached by other courts of appeals. In a 1993 case, the Second Circuit determined that third-degree burglary and attempted third-degree burglary under New York law are categorically violent felonies under the residual clause. *United States v. Andrello*, 9 F.3d 247, 249–50 (2d Cir. 1993) (per curiam). The court failed to apply the modified categorical approach, to treat the offense as a divisible one, and even to acknowledge that the offense encompassed alternative forms other than generic burglary. After the Supreme Court decided *James*, the Second Circuit reaffirmed *Andrello* in *United States v. Lynch*, 518 F.3d 164, 170 (2d Cir. 2008). *Lynch* chiefly concerned whether *attempted* burglary could serve as a predicate, an issue that the court felt was controlled by *James*. The court, again, failed to apply the modified categorical approach to each statutory alternative form of attempted third-degree burglary. The court acknowledged, in passing, that "a non-generic burglary

may . . . qualify as a violent felony under the statute's residual provision." *Id.* at 171. That is certainly true, but the court gave no explanation of how or why the non-generic crimes of burglary encompassed within the third-degree burglary law presented a serious potential risk of physical injury comparable to that posed by generic burglary. The Second Circuit has similarly held that third-degree burglary under New York law is a "crime of violence" under the Guidelines Manual, but this holding rested entirely on *Andrello* and, again, failed to apply the modified categorical approach. *United States v. Brown*, 514 F.3d 256, 268 (2d Cir. 2008) (In light of *Andrello*, "we can only conclude that third-degree burglary inherently poses the same risk" within the meaning of "crime of violence"); *see also United States v. Hurrell*, 555 F.3d 122, 123–24 (2d Cir. 2009) (same, for attempted third-degree burglary). The Third Circuit has accepted the Second Circuit's holdings in *Andrello* and *Lynch* without considering their rationale or examining their foundation. *See United States v. Harford*, 370 F. App'x 322, 324 (3d Cir. 2010).

Our decision creates a circuit split only on the very narrow question of whether a conviction for third-degree burglary under New York law is categorically a violent felony for armed-career-criminal purposes. ACCA decisions do not control beyond the specific statute under consideration in the jurisdiction issuing the ruling. We have carefully considered the opinions of other circuits, and we do not find them persuasive because they do not address the arguments raised here and are inconsistent with the approach that the Supreme Court outlined last year in *Descamps*.

## B. "Crime of Violence"

Prater's presentence report, adopted by the district court, derived Prater's base offense level of 24 from § 2K2.1(a)(2), which applies to defendants who possess ammunition with at least two prior felony convictions for a crime of violence or a controlled-substance offense. Prater argues that his prior convictions do not qualify as "crime[s] of violence" under the Guidelines Manual. Because Prater forfeited this claim by failing to object below, we review it only for plain error. *Vonner*, 516 F.3d at 385; *accord United States v. Olano*, 507 U.S. 723, 731 (1993). This standard requires Prater "to show (1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of

the judicial proceedings." *Id.* at 386 (internal quotation marks omitted); *see Olano*, 507 U.S. at 732–36.

The Guidelines Manual defines "crime of violence." It provides that a "crime of violence" is a felony that: "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." § 4B1.2(a). The Manual's enumerated-offense clause expressly refers to "burglary *of a dwelling*," whereas the Court's definition of "burglary" in the ACCA applies to "a building or structure." *Taylor*, 495 U.S. at 599. The Manual states that "the definitio[n] of 'violent felony' . . . in 18 U.S.C. § 924(e)(e) [is] not identical to the definition[n] of 'crime of violence' . . . used in [the Guidelines Manual]." § 4B1.4 cmt. n.1. Notwithstanding this, we have previously determined that we decide whether an offense is a "crime of violence" under the Manual in the same way as we decide whether an offense is a "violent felony" under the ACCA "because both share essentially the same definitions." *Gibbs*, 626 F.3d at 352 n.6; *see Johnson*, 559 U.S. at 140 (construing 'violent felony' under § 924(e) by reference to the statutory definition of 'crime of violence' in 18 U.S.C. § 16).

We need not decide whether the district court erred in considering Prater's prior convictions as "crimes of violence" under the Guidelines Manual because we hold that any error would have been anything but "obvious or clear." A finding of plain error occurs only "sparingly." *United States v. Young*, 470 U.S. 1, 15 (1985). A legal issue "subject to reasonable dispute" is not plain error. *Puckett v. United States*, 556 U.S. 129, 135 (2009). The existence of a "circuit split precludes a finding of plain error." *United States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995).

Here, the discussion above suffices to indicate that there is considerable confusion and disagreement—let alone "reasonable dispute"—about which state offenses qualify as predicates under the ACCA and the Guidelines Manual, especially under the residual clauses. Since the Supreme Court decided *Sykes* in 2011 (and *Chambers* in 2009, *Begay* in 2008, and *James* in 2007), it has continued to receive multiple certiorari petitions asking it to determine which state-law offenses qualify as violent felonies and crimes of violence under the residual clauses. *See*

*Derby v. United States*, 131 S. Ct. 2858 (2011) (Scalia, J., dissenting from denial of certiorari). One Justice—enough to demonstrate reasonable disagreement—has said that "how [the Court] would resolve these cases if [it] granted certiorari would be a fine subject for a law-office betting pool." *Id.* at 2859. Justice Scalia noted that it is "uncertain how [his] lower-court colleagues will deal with" the Court's ACCA jurisprudence. *Ibid.* Justice Scalia would "ring down the curtain on the ACCA farce playing in federal courts throughout the Nation." *Id.* at 2860.

We have not, in the past, hesitated to hold that a state-law offense fails to qualify as a crime of violence under the Guidelines Manual. *See Mosley*, 575 F.3d at 605 (resisting and obstructing a police officer, under Michigan law, not categorically a crime of violence). We reserve judgment on the specific question (should it ever arise again in this circuit) whether treating prior New York convictions for third-degree burglary or attempted third-degree burglary as "crimes of violence" constitutes error. For present purposes, it suffices to say that it is not plain error under existing law.

IV

The district court erred in concluding that third-degree burglary and attempted third-degree burglary under New York law categorically constitute violent felonies under § 924(e). On remand, the district court may afford the government the opportunity to offer into the record appropriate *Shepard* documents. The district court should consider only the limited class of *Shepard* documents. It should also focus its inquiry "not [on] the facts underlying the prior convictions," *Descamps*, 133 S. Ct. at 2287, but only on the elements of the version of the crime for which Prater was convicted in order to determine whether Prater "necessarily admitted" or was necessarily convicted of committing a violent felony, *Mosley*, 575 F.3d at 608. We therefore VACATE the district court's sentence and REMAND for resentencing consistent with this opinion.

―――――――――――

**DISSENT**

―――――――――――

ALICE M. BATCHELDER, Circuit Judge, dissenting.  I respectfully dissent for two reasons.  First, Prater has not preserved the objection that he now raises on appeal to his designation as an Armed Career Criminal.  Although Prater did make several particular objections to the district court, none of them questioned whether his prior New York felony convictions qualified as "violent felonies" for purposes of an ACCA enhancement.  And because I agree with the majority opinion that the "confusion and disagreement," Maj. Op. at 27, that mars analysis under the ACCA residual clause precludes a finding that the district court plainly erred, I would affirm Prater's sentence.

Second, I would affirm Prater's sentence even had he preserved the specific objection he now raises.  Under the "modified categorical approach," the risk of violent confrontation inherent in one set of alternative elements in a divisible statute need only be "reasonably likely . . . in the ordinary case" to approach the level of risk inherent in generic burglary.  Because each set of alternative elements of New York's third-degree burglary statute encompasses risks similar to those of generic burglary, I would affirm Prater's sentence.

**I.**

Prater's objection to his Presentence Investigation Report ("PSR") states:

> Defendant Paul Douglas Prater gives notice of his objections to the Presentence Investigation Report (the "PSR") issued in this case.  Mr. Prater objects to his designation as an Armed Career Criminal under 18 U.S.C. § 924(e) and USSG § 4B1.4.  The PSR states that Mr. Prater qualifies as an Armed Career Criminal as a result of the following convictions:  (1) February 19, 1980 – Attempted Burglary 3rd Degree on January 7, 1980 (PSR at ¶ 26); (2) February 24, 1988 – Robbery 3rd Degree on March 17, 1985 (PSR at ¶ 30); (3) February 24, 1988 – Burglary 3rd Degree on October 28, 1987 (PSR at ¶ 31); and (4) March 30, 2000 – Attempted Burglary 3rd Degree on November 7, 1999 (PSR at ¶ 32).
>
> Mr. Prater relies on the arguments previously raised on this issue.  Some of the pleading dealing with this issue are documents 51 and 65 in the record.  In summary, the prior pleadings dealt with Prater's arguments relating to: 1) the contention that his rights under New York law had been merely suspended, not

revoked, or had otherwise been restored and Prater's rights under the Second Amendment to the United States Constitution; 2) the contention that the charging statute allowed conviction under a strict liability standard without a required knowledge or intent and was vague and overly broad; and (3) the Armed Career Criminal punishment was excessive and a violation of his Eighth Amendment rights under the specific and particular facts of this case.

The majority opinion reasons that "[a]lthough the second paragraph of Prater's objection statement discusses *additional* issues, the first paragraph, albeit barely, properly preserves Prater's violent-felony claim." Maj. Op. at 6.

As the majority acknowledges, however, objecting to a court's action is not itself sufficient to preserve a claim. Looking solely at the first paragraph, Prater objected to his designation in general terms, but he provided no basis for his objection. Prater must do more than object; he also must provide "the grounds for that objection." Fed. R. Crim. P. 51(b). The first paragraph—on its own—does not "constitute a sufficiently articulated objection," nor does it provide "the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (internal quotation marks omitted).

When Prater stated that he "objects to his designation as an Armed Career Criminal," under the majority's reading, "[t]his can only mean that Prater objected to the presentence report because he did not believe that he . . . 'violate[d] section 922(g) of [Title 18 of the United States Code] and has three previous convictions by any court . . . for a violent felony . . . .'" Maj. Op. at 6. But Prater could argue—and actually has argued in the second paragraph—that he has not violated § 922(g) because § 922(g) is unconstitutional. Prater could challenge his designation for any number of reasons unconnected to whether his three previous convictions are violent felonies. Thus, an objection to his "designation" should not be construed automatically as an objection to his state-law convictions as violent felonies. Prater "object[ed]," but in the first paragraph he provided no reason for his objection. Because we are left to guess the reasons for Prater's objection, the objection was not "clearly made" and the first paragraph of Prater's objection to the PSR is insufficient to preserve his claim. We should not vacate Prater's sentence for a reason Prater himself never raised in the district court.

Interpreting the first paragraph of Prater's objection statement in light of the second paragraph further undermines the majority's conclusion. The "arguments previously raised" on which Prater relies appear in his first and second motions to dismiss.[1] He argued that the strict liability nature of the ACCA enhancement "is a violation of due process," that the ACCA enhancement violates "the Fifth and Sixth Amendments['] [] protection against vagueness," that the ACCA enhancement violates the Eighth Amendment, and that his New York convictions' violate the Second Amendment. These are the same grounds specifically enumerated in the second paragraph of his objection statement. Nowhere did Prater allege that his prior New York felony convictions were not violent felonies. Thus, regardless whether we read the first and second paragraph of Prater's objection statement together or separately, Prater has not preserved this claim.

The majority also finds it important to note that both the probation officer and the district court judge addressed whether Prater's convictions were violent felonies. The majority admits elsewhere, however, that "[i]t is the '*government* [that] bears the burden of proof with regard to the various penalties it seeks to have imposed under the sentencing guidelines." Maj. Op. at 16 (quoting *United States v. Cowart*, 90 F.3d 154, 159 (6th Cir. 1996)). Even absent an objection, it was incumbent upon the government and the district court judge to ensure that Prater's prior convictions were qualifying predicate offenses. The fact that the district court concluded that Prater's convictions were violent felonies does not mean that Prater can now question whether they qualify as violent felonies for the first time on appeal.[2]

Accordingly, I would review only for plain error the district court's conclusion that Prater's convictions are "violent felonies" within the meaning of the ACCA. The reasons provided by the majority opinion for holding that the district court did not plainly err by concluding that Prater's prior convictions are "crimes of violence" apply equally here. As the

---

[1]Prater relied on these same "previously raised" objections during the sentencing colloquy too.

[2]To the extent that the district court judge's statements are relevant, the judge's order overruling Prater's objections to the PSR describes Prater's objections as follows:

> Therefore, the defendant is properly designated an armed career criminal. His objections present no cogent argument to the contrary. Instead, the defendant summarily alludes to attacks on his prior convictions that have been previously rejected by this court. The defendant's arguments regarding vagueness, overbreadth, restoration of rights, and the Second and Eighth Amendments have already been addressed by this court and will not be discussed further.

opinions in this case illustrate, whether a conviction for a state law offense is a "violent felon[y]" is "subject to reasonable dispute," *Puckett v. United States*, 556 U.S. 129, 135 (2009), meaning the error—if any—is not "plain."  The fact that the Second Circuit has held that New York's third-degree burglary statute categorically qualifies as a violent felony further precludes a finding of plain error. *See United States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995).

## II.

Not only did the district court not plainly err, however, it did not err at all.  My disagreement with the majority opinion arises from its characterization of the scope of risk inherent in the two non-generic forms of New York's third-degree burglary statute.  Our cases demand a more permissive approach when comparing alternative elements to their generic form.  We are required to assess the risk inherent "in the ordinary case" where the elements are present. *United States v. Skipper*, 552 F.3d 489, 493 (6th Cir. 2009).  "A risk need not itself be an element of an offense in order to be considered as part of the hypothetical 'ordinary case' by which the offense's dangerousness is measured. . . .  It is instead enough that the risk is reasonably likely to arise in the ordinary case where the elements themselves are present . . . ." *Id.*  The risk involved in the commission of New York third-degree burglary need not be "exactly the same kind of risk" as involved in generic burglary.  And the risk relevant to this analysis is not merely the possibility of a violent confrontation with someone in or around the building. *Taylor v. United States*, 495 U.S. 575, 588 (1990), also emphasizes the risk of violent confrontation with "some other person who comes to investigate."

The first alternative form of third-degree burglary is knowingly entering or remaining unlawfully in a vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein, or used as an elementary or secondary school. *See* N.Y. Penal Law §§ 140.20, 140.00(2).  The majority believes that

> the offense encompasses unlawful entry of a houseboat but not a recreational canoe, of a food truck but not a recreational seaplane, of a mobile home used as a classroom but not a school bus.  By restricting its application to places where people are likely to be found, New York's burglary statute, as applied to vehicles and watercraft, is sufficiently similar to generic burglary.

Maj. Op. at 20. Although the majority reaches the correct conclusion, it unnecessarily restricts the scope of the conduct contemplated by this alternative. The modified categorical approach directs us to analyze the "elements of the offense," not how relevant courts have construed the elements of the underlying state offense. Relevant courts can, nonetheless, assist in describing conduct covered by the plain terms of the statute. The first alternative covers a wide array of places. For instance, a "building" includes a department store's "storage trailer" from which customers could pick up large items, *see People v. Wandell*, 728 N.Y.S.2d 578, 579 (App. Div. 2001); a passenger train car, *see People v. Marino*, 617 N.Y.S.2d 26, 26 (App. Div. 1994); or a van used by a "construction company primarily to transport workers, materials and tools," *see People v. Mincione*, 489 N.E.2d 1285, 1285 (N.Y. Ct. App. 1985). This alternative is not restricted to places "where people are likely to be found." Maj. Op. at 20. Even a food truck or mobile home used as a classroom likely is occupied only a few hours each day. Yet this is sufficient for the majority to conclude that the risk of violent confrontation is sufficiently similar to the risk inherent in generic burglary.

But the majority then concludes that because the second alternative form of burglary—knowingly entering or remaining unlawfully in an enclosed motor truck or motor-truck trailer, *see* §§ 140.20, 140.00(2)—contains no requirement that it be used for "lodging, business, or schooling," the risk of a violent confrontation "is significantly less," and thus Prater's conviction must be vacated. Maj. Op. at 21. The absence of this specific requirement is irrelevant, however, if *in the ordinary case* a similar risk is likely to arise during the burglary of an enclosed motor truck or motor-truck trailer. *See Skipper*, 552 F.3d at 493. Although undefined in § 140.00(2), a motor truck is generally a commercial vehicle used to transport cargo. *See, e.g.*, N.Y. Transp. Law § 210 ("The term 'motor truck' as used in this article shall be deemed to mean and include any commercial motor vehicle held and used for the transportation of goods, wares and merchandise for hire or for a business purpose, pursuant to the rules and regulations of the commissioner."). Motor trucks often are attached to motor-truck trailers, and many even have sleeper compartments. A motor truck may be less likely to be occupied than a building, but is a motor truck—especially considering its cargo—less likely to be occupied than a food truck, passenger rail car, or mobile home used as a classroom? And, whether occupied or not, can we conclude that the risk of violent confrontation with one who investigates a burglary in progress is

somehow less where a motor truck is involved?  The majority opinion provides little support for answering these questions in the affirmative, and yet its decision to vacate Prater's sentence relies entirely on these distinctions.  The risk, in the typical case, is "comparable," *James v. United States*, 550 U.S. 192, 212 (2007), to that posed by burglary of a houseboat, mobile home, food truck, and passenger train car, and comparable to that posed by burglarizing a building in "its ordinary meaning."

Our cases are mostly unhelpful in conducting this elements-specific inquiry.  The fact that we held in *United States v. Coleman*, 655 F.3d 480, 482 (6th Cir. 2011), that burglary of an "occupied structure" or "a separately secured or separately occupied portion of an occupied structure," presented a risk similar to that of generic burglary tells us nothing about the nature of the risk posed by unlawfully entering a motor truck.  Similarly, finding that trespassing in the "habitation" of another, *see Skipper*, 552 F.3d at 492–93, or in "places in which a person is actually or likely to be present," *see United States v. Lane*, 909 F.2d 895, 909 (6th Cir. 1990), involves a risk similar to that inherent in generic burglary does not answer the question whether, for instance, trespassing in a food truck, motor truck, or passenger rail car presents similar risks.

Despite acknowledging that the modified categorical approach is the correct approach, the majority opinion surveys the caselaw and concludes, "We are aware of no case in which this court has held that a divisible statute, containing an alternative form of burglary similar to the one at issue here, categorically qualified as a predicate offense under the residual clause."  Maj. Op. at 24.  But three sentences later the majority opinion acknowledges that *United States v. Andrello*, 9 F.3d 247, 249–50 (2d Cir. 1993) (per curiam) did just that, and yet it correctly dismisses *Andrello* for "fail[ing] to apply the modified categorical approach."  Maj. Op. at 25.  As the majority admits, "ACCA decisions do not control beyond the specific statute under consideration in the jurisdiction issuing the ruling."  Maj. Op. at 26.  The modified categorical approach, when used under the residual clause, requires an elements-specific inquiry.  The fact that no other court has yet to use this inquiry on a set of elements similar to those at issue here is irrelevant.

I respectfully dissent.